EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sierra Club; Toabajeños en Defensa del Ambiente, Inc., y su portavoz el Sr. Juan Camacho; Comité Socio Cultural Comunitario Arizona San Felipe de Arroyo, Inc. y su portavoz el Sr. Alberto Rubio Rodríguez<br><br>Peticionarios<br><br>v.<br><br>Junta de Planificación<br><br>Recurrida | Certiorari<br><br>2019 TSPR 210<br><br>203 DPR \_\_\_\_ |

Número del Caso:  CC-2019-123


Fecha: 15 de noviembre de 2019


Tribunal de Apelaciones:

    Panel III


Abogado de la parte peticionaria:
Clínica Asistencia Legal UPR

    Lcdo. Pedro J. Saade Llorens



Abogado de la parte recurrida:

    Lcdo. Héctor Morales Martínez




Materia: Derecho Administrativo:  La Sec. 2.7 de la Ley de Procedimiento Administrativo Uniforme no requiere, para la impugnación de un reglamento de su faz, que los peticionarios prueben los criterios de legitimación activa.




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sierra Club; Toabajeños en Defensa del Ambiente, Inc., y su portavoz el Sr. Juan Camacho; Comité Socio Cultural Comunitario Arizona San Felipe de Arroyo, Inc. y su portavoz el Sr. Alberto Rubio Rodríguez<br><br>Peticionarios<br><br>v.<br><br>Junta de Planificación<br><br>Recurrida | CC-2019-0123 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 15 de noviembre 2019.

Nos corresponde expresarnos en torno a los requisitos básicos requeridos por la Ley de Procedimiento Administrativo Uniforme (LPAU), infra, para ejercer la facultad de reglamentación delegada a las agencias administrativas. Específicamente, en el contexto de la revocación de normas reglamentarias. Además, debemos reiterar el alcance del mecanismo provisto expresamente por el legislador en la Sec. 2.7 de la LPAU, infra, que viabiliza la impugnación de su faz de un reglamento, cuando determinada agencia incumple con esos requisitos básicos.

Con ello en mente, veamos el trasfondo fáctico y procesal de la controversia ante nos.

I

En diciembre del 2016, la Junta de Planificación de Puerto Rico (Junta de Planificación) aprobó siete

resoluciones en las que designaban ciertas áreas como reservas naturales y establecían Planes de Usos de Terrenos para las mismas, a saber: Plan Sectorial de Reserva Natural del Humedal Playa Lucía en Yabucoa, Resolución Núm. PU-0002-2016-75; Reserva Natural de Punta Cabullones en Ponce, Resolución PU-002-2016-63; Reserva Natural de Punta Petrona en Santa Isabel, Resolución PU-0002-2016-67; Reserva Natural de Punta Guillarte en Arroyo, Resolución PU-0002-2016-72; Plan Sectorial de la Reserva Natural de Mar Chiquita en Manatí, Resolución JP-PS-MCH; Reserva Natural de Finca Nolla en Camuy, Resolución PU-002-2016-04; Reservas Naturales del Río Camuy en Hatillo y Camuy, Resolución PU-002-2016-RC (Resoluciones del 2016). En esencia, las Resoluciones del 2016 contenían, entre varios asuntos, las normas de uso y disfrute de estas áreas con el propósito de garantizar su preservación, conservación y restauración. Las Resoluciones del 2016 cumplieron con los requisitos procesales para la aprobación de un reglamento según la LPAU, infra. Asimismo, fueron aprobadas mediante las correspondientes Órdenes Ejecutivas.[1] Ninguna de las Resoluciones del 2016 fueron impugnadas ante algún foro judicial.

Sin embargo, la Junta de Planificación emitió en el 2017 varias resoluciones (Resoluciones del 2017) mediante las cuales dejó sin efecto las siete Resoluciones del 2016.

---

[1] El entonces Gobernador de Puerto Rico aprobó las Resoluciones del 2016 mediante las siguientes Órdenes Ejecutivas: OE-2016-069; OE-2016-078; OE-2016-076; OE-2016-074; OE-2016-64; OE-2016-77; OE-2016-81.

La agencia administrativa revocó las Resoluciones del 2016 sin cumplir con los requisitos que exige la LPAU para dejar sin efecto normas reglamentarias. Ello, pues la Junta de Planificación arguyó que no estaba obligada por dichos requisitos debido a que las Resoluciones del 2016 fueron aprobadas "por motivo de fin de año y cambio de gobierno".[2] A pesar de reconocer que las Resoluciones del 2016 "cumplieron con los requisitos procesales" y que "no se impugna el proceso para adoptar estos Planes", concluyó que "la adopción final adolece de deficiencias que derrotaría el propósito de su creación".[3] A petición de la Junta de Planificación, el pasado Gobernador de Puerto Rico derogó las Órdenes Ejecutivas del 2016.[4]

Ante ello, las organizaciones Sierra Club, los Toabajeños en Defensa del Ambiente, Inc., el Comité Socio Cultural Comunitario Arizona San Felipe de Arroyo, Inc. y sus respectivos representantes (peticionarios) acudieron oportunamente al Tribunal de Apelaciones mediante un recurso de revisión judicial. Los peticionarios plantearon que las Resoluciones del 2016 fueron aprobadas conforme a nuestro ordenamiento administrativo y que no fueron impugnadas ante los foros judiciales. A raíz de ello,

---

[2] Cartas explicativas de la Junta de Planificación al Gobernador de Puerto Rico y Memorandos explicativos, Apéndice del certiorari, págs. 181, 183, 185 y 188.

[3] Íd., págs. 181, 183, 185, 186 y 188.

[4] El pasado Gobernador de Puerto Rico derogó las Resoluciones del 2016 mediante las siguientes Órdenes Ejecutivas: OE-2018-026 y la OE-2018-027.

sostuvieron que éstas cobraron fuerza de ley y obligaban a la Junta de Planificación.

Por tanto, los peticionarios arguyeron que la revocación motu proprio realizada por la Junta de Planificación violó el debido proceso de ley. A esos efectos, indicaron que la mera alegación de defectos e imperfecciones en reglamentaciones aprobadas previamente no justifica que una agencia administrativa automáticamente, y en incumplimiento con la LPAU, las deje sin efecto. Esto, pues la LPAU, infra, provee un procedimiento que exige el cumplimiento de unos requisitos mínimos de participación ciudadana para la aprobación, modificación y revocación de las normas reglamentarias.

Los peticionarios destacaron que la derogación de las resoluciones tenía el efecto de eliminar siete reservas naturales que protegen 7,420.41 cuerdas de terreno, más de 10,000 cuerdas de componente marino y 17,300 cuerdas de reserva agrícola. En consecuencia, arguyeron que la Junta de Planificación, como toda otra agencia administrativa, estaba obligada a cumplir con los requisitos dispuestos en la LPAU para dejar sin efecto la reglamentación que protegía estos terrenos.

Por su parte, la Junta de Planificación reiteró que el proceso de aprobación de las Resoluciones del 2016 fue uno "abultado, apresurado, e inefectivo".[5] A pesar de que nuevamente reconoció que las normas fueron aprobadas según

_____

[5] Alegato en oposición a recurso de revisión, Apéndice del certiorari, pág. 15

los requisitos de la LPAU y que las mismas no fueron impugnadas ante los tribunales, la Junta de Planificación sostuvo que estos esfuerzos fueron insuficientes. Por tales razones, alegó que las Resoluciones del 2016 eran nulas e inoficiosas, por lo que la Junta de Planificación estaba autorizada a revocarlas, sin cumplir con los requisitos de revocación de reglamentos dispuestos en la LPAU, infra.

Asimismo, la organización Para La Naturaleza, Inc. compareció ante el Tribunal de Apelaciones como amigo de la corte. En síntesis, sostuvo que la Junta de Planificación actuó en contra del mandato constitucional que exige la más eficaz conservación de los recursos naturales de Puerto Rico. Además, arguyó que los actos de la Junta de Planificación fueron contrarios a Derecho, pues no notificó a la ciudadanía ni le dio la oportunidad de participar en el procedimiento para revocar las normas reglamentarias. De igual forma, resaltó que la ley habilitadora de la Junta de Planificación tampoco le provee la facultad para dejar sin efecto reglas legislativas.

Posteriormente, el Tribunal de Apelaciones desestimó el recurso de revisión judicial. El foro apelativo intermedio determinó que los peticionarios, al ser asociaciones y organizaciones, no gozaban de legitimación activa para impugnar las acciones de la Junta de Planificación. El Tribunal de Apelaciones razonó que los peticionarios no demostraron un daño particularizado y su relación causal con los actos de la Junta de Planificación, por lo que resolvió que la controversia no era justiciable.

La Hon. Migdalia Fraticelli Torres discrepó de la Sentencia y emitió un Voto Disidente, en el cual sostuvo que la controversia ante su consideración no requería que los peticionarios probaran los criterios de legitimación activa. Esto, pues la impugnación de un reglamento de su faz conforme a la Sec. 2.7 de la LPAU, infra, no lo exige. En consecuencia, indicó que los peticionarios, como cualquier otra persona, tenían legitimación activa para impugnar el incumplimiento de las Resoluciones del 2016 y las Resoluciones del 2017 con los requisitos dispuestos en la LPAU, infra. Además, destacó que el mensaje legislativo en torno a la revocación, modificación y creación de reglamentos es claro, por lo que expresó que la Junta de Planificación debió cumplir con los requisitos básicos de notificación y participación ciudadana antes de dejar sin efecto las Resoluciones del 2016.

En desacuerdo con la desestimación de su recurso de revisión judicial, los peticionarios acuden ante este Tribunal y arguyen que el foro apelativo intermedio erró al no reconocer su legitimación activa. Los peticionarios plantean que la jurisprudencia ha sostenido que la impugnación de su faz de un reglamento por incumplimiento con los requisitos procesales para su aprobación puede realizarse por cualquier persona interesada. En consecuencia, solicitan que revoquemos el dictamen emitido por el Tribunal de Apelaciones y le ordenemos atender el caso en sus méritos.

Examinada la petición de <u>certiorari</u>, este Tribunal le proveyó un término de veinte días a la Junta de Planificación para que mostrara causa por la cual no se debía revocar el dictamen del Tribunal de Apelaciones. Debido a lo anterior, la Junta de Planificación comparece ante nos y sostiene que el foro apelativo intermedio actuó correctamente. En esencia, la Junta de Planificación alega que ésta tiene la facultad de revocar las Resoluciones del 2016 y que los peticionarios no demostraron cómo ello les causó un daño real.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II**

**A.**

Como es conocido, nuestro ordenamiento cuenta con una política pública ambiental de rango constitucional. A esos efectos, la Constitución de Puerto Rico exige "la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad". Art. VI, Sección 19, Const. ELA, LPRA, Tomo 1. En consecuencia, la Asamblea Legislativa ha dispuesto que todas las agencias e instrumentalidades del Gobierno de Puerto Rico deben aplicar y administrar todas las leyes y cuerpos reglamentarios vigentes y futuros en "estricta conformidad" con la política pública ambiental. Art. 4 de la <u>Ley sobre política pública ambiental</u>, Ley Núm. 416-2004, 12 LPRA sec. 8001a(b).

Como corolario de lo anterior, la Junta de Planificación es una de las entidades responsables de garantizar la protección y conservación de nuestros recursos naturales. Ley para el Plan de Uso de Terrenos del Estado Libre Asociado de Puerto Rico, Ley Núm. 550-2004, 23 LPRA secs. 227-227o. En el ejercicio de sus poderes cuasi legislativos, la Junta de Planificación deberá investigar y analizar distintas áreas territoriales, para así clasificarlas y, conforme a ello, designar las normas para su uso. Art. 14 de la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975, 23 LPRA sec. 62m. Mediante Planes de Usos de Terrenos, la Junta de Planificación designa y limita el uso de los terrenos según sus clasificaciones, dependiendo de si los mismos son urbanos, agrícolas, áreas de conservación, entre otros. De esta manera, la Asamblea Legislativa procura garantizar la protección y conservación de nuestros recursos y reservas naturales, pues "toda obra o proyecto a ser realizado por cualquier persona o entidad deberá estar de acuerdo con las recomendaciones de los Planes de Usos de Terrenos". Íd.

Luego de que la Junta de Planificación adopta un Plan de Uso de Terreno, el mismo debe ser enviado a la Rama Ejecutiva para la aprobación del Gobernador o Gobernadora de Puerto Rico. Íd. Una vez la Rama Ejecutiva aprueba un Plan de Uso de Terreno, el mismo surtirá efecto inmediatamente.

**B.**

En nuestro ordenamiento, las agencias administrativas gozan del poder cuasi legislativo de aprobar reglas y reglamentos. En esa encomienda, los entes administrativos pueden formular reglas no legislativas y reglas legislativas. Las reglas no legislativas "constituyen pronunciamientos administrativos que no alteran los derechos ni las obligaciones de los individuos". Mun. de Toa Baja v. D.R.N.A., 185 DPR 684, 696 (2012). La LPAU dispensa del procedimiento formal de la reglamentación en esos casos.

Por otro lado, una regla legislativa "crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley". Mun. de San Juan v. J.C.A., 152 DPR 673, 692 (2000). Contrario a las normas no legislativas, la Asamblea Legislativa ha sido consecuente y clara al disponer de un procedimiento específico para la aprobación, revocación y enmienda de las reglas legislativas. Esto, pues "la importancia que reviste este tipo de regla o reglamento, y el efecto que puede acarrear para el público en general . . . requiere el cumplimiento del procedimiento de reglamentación según se establece en la LPAU". Asociación Maestros v. Comisión, 159 DPR 81, 93 (2003). A esos efectos, "[s]urge con meridiana claridad que la preocupación del legislador se circunscribe al aspecto puramente procesal de la aplicación de la regla o reglamento". D. Fernández Quiñones, Derecho Administrativo

y Ley de Procedimiento Administrativo Uniforme, 3ra ed.,
Colombia, Ed. Forum, 2013, pág. 122.

Por tanto, la LPAU exige el cumplimiento por parte
de las agencias administrativas con determinados requisitos
al momento de "aprobar, enmendar o **derogar** una regla o
reglamento". (Énfasis suplido). Sec. 2.1 de la LPAU, Ley
Núm. 38-2017, 3 LPRA sec. 9611. En consecuencia, todo
procedimiento de reglamentación debe cumplir con cuatro
requisitos básicos: (1) notificar al público la
reglamentación que ha de aprobarse; (2) proveer oportunidad
para la participación ciudadana, incluyendo vistas públicas
cuando sea necesario u obligatorio; (3) presentar la
reglamentación ante el Departamento de Estado para la
aprobación correspondiente, y (4) publicar la
reglamentación aprobada. Secs. 2.1, 2.2, 2.3, 2.8, 2.11 de
la LPAU, supra, 3 LPRA secs. 9611-9613, 9618, 9621.

Reiteradamente, hemos dispuesto que todos éstos
"constituyen requisitos imprescindibles y de ineludible
cumplimiento". Mun. de Toa Baja v. D.R.N.A., supra, pág.
695. "El cumplimiento de ese proceso es indispensable para
poder reconocerle fuerza de ley a la regla promulgada, ya
que ello forma parte de las garantías procesales que permean
todo el estatuto". Centro Unido Detallistas v. Com. Serv.
Púb., 174 DPR 174, 183 (2008). Debido a lo anterior, la
LPAU decreta la nulidad de todo reglamento que se adopte
al margen de las disposiciones de la LPAU. Sec. 2.7 de la
LPAU, supra, 3 LPRA sec. 9617.

Para ello, cualquier persona puede impugnar de su faz una regla o reglamento ante el Tribunal de Apelaciones por un período de treinta días luego de su vigencia. Íd. Hemos sido enfáticos en que toda persona tiene la capacidad para impugnar el incumplimiento con las normas de la LPAU, conforme con la Sec. 2.7 de la LPAU, supra, 3 LPRA sec. 9617. Así, resolvimos en J.P. v. Frente Unido I:

> **Cualquier persona** puede impugnar la validez de una regla o reglamento aprobado por una agencia administrativa en incumplimiento de las disposiciones de la LPAU . . . haya participado o no durante la celebración de las vistas públicas, como parte del proceso para su aprobación. **No tiene que ser afectad[a] por la aplicación de dicha regla o reglamento para tener la capacidad para promover la referida impugnación ante el Tribunal de Apelaciones.** (Énfasis suplido). J.P. v. Frente Unido I, 165 DPR 445, 462-463 (2005).

En consecuencia, en la impugnación de su faz de un reglamento "no se requiere demostrar una lesión a un interés individualizado del litigante para que proceda la revisión, ya que ésta busca invalidar el reglamento en toda circunstancia en que pueda ser aplicable". Centro Unido Detallistas v. Com. Serv. Púb., supra, pág. 186.

Por el contrario, una persona que alegue ser afectada personalmente por la aplicación de un reglamento, puede impugnar su validez ante el Tribunal de Primera Instancia. Íd., págs. 184-185. En esos casos, la parte que acude en revisión judicial debe mostrar que ha sido "adversamente afectada" por los actos de la agencia administrativa, conforme a la Sec. 4.2 de la LPAU, supra, 3 LPRA sec. 9672.

Examinado el derecho aplicable, procedemos a resolver la controversia ante nuestra consideración.

### III

Según expuesto anteriormente, en el año 2016, la Junta de Planificación aprobó varias resoluciones que designaron como reservas naturales a siete regiones de riqueza natural y ambiental en Puerto Rico. Las Resoluciones del 2016 tenían como propósito limitar el uso de las referidas reservas naturales, conforme a la política pública ambiental de rango constitucional de nuestro ordenamiento.

A pesar de ello, tan solo un año después, la Junta de Planificación derogó las Resoluciones del 2016, bajo el pretexto de que las mismas habían sido aprobadas por motivo de fin de año y en virtud de un cambio de administración política. Ello, en incumplimiento con los requisitos de revocación de reglamentos dispuestos en la LPAU. Secs. 2.1, 2.2, 2.3, 2.8, 2.11 de la LPAU, supra, 3 LPRA secs. 9611-9613, 9618, 9621. De esta manera, dejó 7,420.41 cuerdas de terreno, más de 10,000 cuerdas de componente marino y 17,300 cuerdas de reserva agrícola desprovistas de protección ambiental alguna.

Paradójicamente, la Junta de Planificación reconoció que las Resoluciones del 2016 son reglas legislativas que requieren el cumplimiento con las normas dispuestas en las Secs. 2.1, 2.2, 2.3, 2.8, 2.11 de la LPAU, supra, 3 LPRA secs. 9611-9613, 9618, 9621. De igual forma, aceptó en varias ocasiones que las mismas fueron aprobadas conforme a estos requisitos procesales. Además, expresó que no fueron impugnadas por persona alguna ante los foros judiciales.

Ante ello, el Tribunal de Apelaciones desestimó el recurso de revisión judicial presentado por los peticionarios debido a falta de legitimación activa. Como vimos, el foro apelativo intermedio resolvió que los peticionarios estaban obligados a demostrar los efectos y daños que causaron las acciones de la Junta de Planificación.

En primer lugar, el Tribunal de Apelaciones erró al no reconocer la legitimación activa de los peticionarios para impugnar de su faz las Resoluciones del 2017. Cobijándose en el precedente de Fund. Surfrider y otros v. ARPe, 178 DPR 563 (2010), el foro apelativo intermedio obvió la distinción entre una impugnación de su faz de un reglamento y una revisión judicial de la aplicación de una norma reglamentaria.

Nuestra jurisprudencia ha dispuesto expresa y claramente que **toda** persona está legitimada de acudir al foro apelativo intermedio a impugnar la aprobación de normas reglamentarias en violación de la LPAU, en virtud de la Sec. 2.7 de la LPAU, supra, 3 LPRA sec. 9617. Ahora bien, es importante aclarar, que la intención del Legislador al incluir la mencionada sección fue establecer una causa de acción con el único propósito de que toda persona afectada por la falta de implementación de las disposiciones de la LPAU pudiese oponerse a dicho incumplimiento. Centro Unido Detallistas v. Com. Serv. Púb., supra, pág. 186. La Sec. 2.7 de la LPAU, supra, 3 LPRA sec. 9617, no fue concebida para impugnar el contenido

del reglamento o la aplicación de éste. Íd., pág. 191. Es decir, el estándar es distinto a una revisión judicial de una determinación administrativa conforme a la Sec. 4.2 de la LPAU, supra, 3 LPRA sec. 9672.

Debido a lo anterior, los peticionarios no tenían que probar cómo la derogación de las resoluciones en controversia les causaba un daño particularizado. El daño concreto que sufrieron los peticionarios es precisamente la violación del proceso dispuesto en la LPAU y ello es lo que motivó a la Asamblea Legislativa a instituir el mecanismo de impugnación de la Sec. 2.7 de la LPAU, supra, 3 LPRA sec. 9617, para resarcir ese daño y obligar al gobierno a cumplir con lo dispuesto en la ley. El hecho de que lo comparta con el resto de la ciudadanía no le quita que sea un daño concreto.

En ese sentido, los peticionarios impugnaron las Resoluciones del 2017 por su incumplimiento con los requisitos procesales de la LPAU, conforme a la Sec. 2.7 de la LPAU, supra, 3 LPRA sec. 9617. En esta ocasión, los peticionarios no alegaron daños individualizados a raíz de actos de la Junta de Planificación, ni estaban obligados a ello. Éstos señalaron adecuadamente la violación crasa de la Junta de Planificación con el procedimiento de reglamentación dispuesto en la LPAU, supra. En consecuencia, ante una impugnación de su faz de las Resoluciones del 2017, el Tribunal de Apelaciones no tenía que considerar los criterios de legitimación activa elaborados por este Tribunal en Fund. Surfrider y otros v.

ARPe, supra, ni mucho menos aplicarlos restrictivamente para privar a los peticionarios de su derecho.

Al resolver lo contrario, el Tribunal de Apelaciones obvió el derecho de los peticionarios de exigir el cumplimiento con las garantías procesales dispuestas en la LPAU por parte de las entidades administrativas. Por tanto, no procedía la imposición de trabas adicionales, contrarias a Derecho, para obstaculizar estos reclamos.

En segundo lugar, es indudable que la Junta de Planificación erró al revocar, a iniciativa propia, las Resoluciones del 2016 sin cumplir con los requisitos procesales discutidos. Las partes coinciden en que las Resoluciones del 2016 constituyen reglas legislativas, pues eran normas de aplicación general que generaban obligaciones y limitaciones en toda persona y entidad que deseara utilizar las siete reservas naturales antes protegidas. Distinto a las Resoluciones del 2017, las Resoluciones del 2016 fueron aprobadas conforme al procedimiento dispuesto en la LPAU. Por tanto, las Resoluciones del 2016 estaban vigentes y habían cobrado fuerza de ley. En consecuencia, la revocación de estas normas reglamentarias tenía que hacerse conforme a las garantías mínimas contenidas en la LPAU, independientemente de la intención ulterior.

La Asamblea Legislativa ha sido clara y contundente al establecer que los requisitos para la aprobación de los reglamentos deben cumplirse al "aprobar, enmendar o **derogar** una regla o reglamento". (Énfasis suplido). Sec. 2.1 de la

LPAU, supra, 3 LPRA sec. 9611. A raíz de ello, la Junta de Planificación **no tenía discreción alguna** para revocar las referidas normas reglamentarias de otra manera que no fuese la dispuesta en la LPAU. La mera alegación de defectos e imperfecciones en los Reglamentos del 2016 y, mucho menos, un cambio de administración política, no justifican la derogación automática de reglamentos vigentes y válidos.

De igual forma, la LPAU provee expresamente la **nulidad** de todo reglamento aprobado en incumplimiento "sustancial" con sus disposiciones. Surge del expediente que la Junta de Planificación no cumplió con **ninguno** de los requisitos para la aprobación de reglamentos, pues no notificó al público de su intención de revocar la reglamentación ni proveyó oportunidad alguna de participación ciudadana. Debido a lo anterior, no debe haber duda alguna de que las Resoluciones del 2017 que revocan motu proprio las Resoluciones del 2016 son irremediablemente nulas.

Concluir lo contrario haría la Sec. 2.1 de la LPAU letra muerta, pues daría mano libre a las entidades administrativas para obviar completamente los requisitos procesales contenidos en la LPAU y a revocar normas reglamentarias a su gusto y arbitrio. De este modo, se legitimaría una peligrosa práctica en contravención clara del Derecho y se permitiría la inestabilidad jurídica de nuestro ordenamiento. Como agravante, se facilitaría que, ante todo cambio de administración política, las agencias actúen desmedidamente y deroguen normas con vigencia y

fuerza de ley sin el debido procedimiento expresamente contenido en nuestra legislación.

## IV

Por todo lo anteriormente expuesto, expedimos el recurso de <u>certiorari</u> ante nuestra consideración y revocamos al Tribunal de Apelaciones. En consecuencia, dejamos sin efecto las Resoluciones del 2017, por lo que las designaciones de reservas naturales se mantienen en vigor, según previamente reglamentadas.

Se dictará Sentencia de conformidad.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sierra Club; Toabajeños en Defensa del Ambiente, Inc., y su portavoz el Sr. Juan Camacho; Comité Socio Cultural Comunitario Arizona San Felipe de Arroyo, Inc. y su portavoz el Sr. Alberto Rubio Rodríguez<br><br>Peticionarios<br><br>v.<br><br>Junta de Planificación<br><br>Recurrida | CC-2019-0123 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 15 de noviembre de 2019.

Por los fundamentos expuestos en la Opinión que antecede, se expide el auto de *certiorari* y se revoca la Sentencia del Tribunal de Apelaciones. En consecuencia, se dejan sin efecto las Resoluciones derogatorias emitidas por la Junta de Planificación objeto de impugnación en este recurso, por lo que las designaciones de reservas naturales se mantienen en vigor, según previamente reglamentadas.

Notifíquese inmediatamente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez hace constar la siguiente expresión de conformidad, a la cual se une la Jueza Presidenta Oronoz Rodríguez:

¨Estoy conforme con la Opinión que antecede puesto que la controversia en este caso gira en torno a una acción que persigue la impugnación de la validez de un reglamento de su faz y no en su aplicación. Por tal razón, cualquier

jurisprudencia relacionada con la impugnación de un reglamento en su aplicación es impertinente para la resolución de este pleito.¨

El Juez Asociado señor Estrella Martínez hace constar la siguiente expresión de conformidad:

¨Hoy, este Tribunal adjudica el caso de epígrafe conforme a Derecho, en miras de garantizar que las agencias que incumplan con los requisitos de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*, puedan ser cuestionadas ante los foros judiciales.

Contrario a lo dispuesto en la Opinión concurrente, la controversia ante nuestra consideración no requiere, ni la Opinión mayoritaria pretende, validar ni rechazar los criterios de legitimación activa pautados en *Fund. Surfrider y otros v. ARPe*, 178 DPR 563 (2010), para la impugnación de la aplicación de un reglamento. Lo que sí exige esta controversia es pautar que, en definitivo, estos criterios **no** son de aplicación en la impugnación de su faz de las normas reglamentarias. Ello, pues eso fue lo que resolvió erróneamente el Tribunal de Apelaciones.

De no haber resuelto lo que hoy acertadamente pauta este Tribunal, arriesgábamos que otros y otras litigantes que impugnen de su faz alguna norma reglamentaria sean impedidos de acudir a los foros judiciales por la implantación errónea de los criterios de *Fund. Surfrider y otros v. ARPe*, supra, en este contexto. Lo anterior, sin duda alguna, hubiese redundado en el cierre de las puertas del acceso a la justicia.¨

El Juez Asociado señor Colón Pérez concurre con opinión escrita.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sierra Club; Toabajeños en
Defensa del Ambiente, Inc.,
y su portavoz el Sr. Juan
Camacho; Comité Socio Cultural
Comunitario Arizona San Felipe       CC-2019-0123    *Certiorari*
de Arroyo, Inc. y su portavoz
el Sr. Alberto Rubio Rodríguez
    Peticionarios

          v.
Junta de Planificación
     Recurrida


Opinión Concurrente emitida por el Juez Asociado señor COLÓN PÉREZ.


En San Juan, Puerto Rico, a 15 de noviembre de 2019.

Al igual que una mayoría de este Tribunal, coincidimos en que en escenarios como el de autos, donde una agencia administrativa incumple con las disposiciones de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9601 *et seq.*, para la aprobación, enmienda o derogación de sus reglamentos, cualquier ciudadano o ciudadana puede impugnar dicha acción sin tener que demostrar una lesión a un interés individualizado. Ello es correcto en derecho, pero además es lo justo.

Ahora bien, ya que la Opinión que hoy emite esta Curia *sub silentio* parecería reiterar -- a nuestro juicio, errónea e innecesariamente -- que, conforme lo resuelto en *Fund. Surfrider y otros v. A.R.Pe.,*

178 DPR 563 (2010), el estándar sería distinto cuando se trata de la revisión judicial impugnando el contenido del reglamento o la aplicación de éste, -- debido a que en ese tipo de caso la parte que reclama debe demostrar que ha sido *adversamente afectada* por una orden o resolución final de una agencia administrativa --, respetuosamente concurrimos con el resultado al que hoy se llega. Al respecto, véanse páginas 10, 12 y 13 de la Opinión del Tribunal.

Y es que el estándar de legitimación activa requerido por este Tribunal en *Fund. Surfrider y otros v. A.R.Pe*, *supra* -- y que se recoge con aprobación en el presente caso -- es, desde nuestra perspectiva, uno extremadamente restrictivo que pudiese menospreciar reclamos legítimos de ciudadanos y ciudadanas que en ciertos momentos pudieran verse afectados por determinadas políticas del Estado. Recordemos que en el precitado caso, se concluyó, de manera errada, que el concepto "*adversamente afectado* por una orden o resolución final de una agencia administrativa" significaba que la parte que acudía a un Tribunal para la revisión de una decisión de una agencia administrativa, debía tener un interés sustancial en el asunto reclamado, bien porque sufrió o porque sufriría una lesión o daño particular como consecuencia de la acción administrativa que se impugnase. Ese daño, según lo resuelto en *Fund. Surfrider y otros v. A.R.Pe, supra*, tenía que ser claro, específico y no abstracto, hipotético o especulativo.

Lo anterior, pues, según lo entendió una mayoría de los jueces y juezas que componían el Tribunal en ese entonces, ello aseguraba que se resolviesen controversias genuinas surgidas

entre partes opuestas que tuviesen un interés real de obtener un remedio que afectase sus relaciones jurídicas. Por tanto, en *Fund. Surfrider y otros v. A.R.Pe., supra,* se sentenció, repetimos, a nuestro juicio incorrectamente, que para que un litigante pudiese solicitar la intervención del tribunal mediante la revisión judicial, éste tenía que demostrar que era parte y que había sido o sería adversamente afectado por la actuación administrativa que se impugnaba. *Fund. Surfrider y otros v. A.R.Pe., supra,* págs. 579-80.

Un análisis desapasionado y detenido de la norma antes expuesta, -- la cual se hace formar parte del presente caso --, nos lleva a concluir que la misma resulta de tal grado excesiva que tiene como consecuencia limitar el acceso de los ciudadanos y ciudadanas a los tribunales de justicia en el país. Principio con el que, a todas luces, no estamos de acuerdo. **¿Es ese el análisis que hoy, sin ser necesario, valida nuevamente este Tribunal?**

En ese sentido, y tal como ha sido sentenciado por otros miembros de este Foro en el pasado, somos del criterio que en nuestro ordenamiento jurídico debe imperar una interpretación amplia y liberal sobre la capacidad de los individuos y grupos para incoar reclamaciones en contra de las agencias y funcionarios de gobierno por violar la política pública que estos últimos vienen obligados a tutelar. Véase, *Fund. Surfrider y otros v. A.R.P.e., supra*, pág. 612 (Fiol Matta, opinión disidente). En vista de que lo reiterado en el caso de marras -- en torno a lo resuelto en *Fund. Surfrider y otros v. A.R.Pe, supra* -- se aparta de lo antes expuesto, no podemos

estar conforme con la totalidad de los fundamentos recogidos en la Opinión que hoy emite esta Corte.

Es, pues, por todo lo anterior, que respetuosamente concurrimos con el resultado al que llega hoy este Tribunal.


                              Ángel Colón Pérez
                              Juez Asociado